IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

MARK FADDIS                                                    PLAINTIFF

VS.                              CIVIL NO. 06-3025

MICHAEL J. ASTRUE[1], Commissioner
SOCIAL SECURITY ADMINISTRATION                                DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Mark Faddis, brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Act.

## Background:

The applications for DIB and SSI now before this court were protectively filed on December 29, 2003, alleging an onset date of August 10, 2002, due to a herniated disc in the neck, migraine headaches, and a broken hand. (Tr. 47-49, 68, 338-340). An administrative hearing was held on July 7, 2005. (Tr. 353-379). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 46 years old and possessed a ninth grade education. (Tr. 357). The record reveals that he had past relevant work ("PRW") experience as a truck driver and mechanic. (Tr. 104-111, 358-360).

---

[1]Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

The Administrative Law Judge ("ALJ"), rendered an unfavorable decision on September 20, 2005. (Tr. 13-19).  He concluded that plaintiff's chronic right shoulder pain, cervical strain, and mild carpal tunnel syndrome were severe but determined that they did not meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4.  (Tr. 15).  He also determined that plaintiff's alleged mental impairment was non-severe.  (Tr. 16).  The ALJ then found that plaintiff retained the residual functional capacity ("RFC") to perform a full range of light exertional level work requiring only occasional stooping and crouching.  Utilizing the Medical-Vocational Guidelines (the "Grids"), the ALJ then concluded that plaintiff could still perform work that exists in significant numbers in the national economy.  (Tr. 18-19).

On March 17, 2006, the Appeals Council declined to review this decision.  (Tr. 3-5). Subsequently, plaintiff filed this action.  (Doc. # 1).  This case is before the undersigned by consent of the parties.  Both parties have filed appeal briefs and the case is now ready for decision.  (Doc. # 7, 8).

**<u>Applicable Law:</u>**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the

Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

In determining whether the ALJ properly disregarded plaintiff's subjective complaints of pain, the court must determine if the ALJ properly followed the requirements of *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted)*,* in evaluating his pain and credibility.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
> The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler*, 739 F.2d at 1322 (emphasis in original).

However, in addition to the requirement that the ALJ consider the plaintiff's allegations of pain, he also has a statutory duty to assess the credibility of plaintiff and other witnesses. *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). The ALJ may discredit subjective complaints of pain

4

that are inconsistent with the record as a whole. *Ownbey v. Shalala*, 5 F.3d 342, 344 (8th Cir. 1993).

Within his opinion, the ALJ attempts to consider the factors required by *Polaski*, as outlined above, in determining plaintiff's RFC. (Tr. 16-18). With regard to plaintiff's physical complaints, the ALJ determined that there was substantial evidence that plaintiff retained the RFC to perform a full range of light work requiring only occasional stooping and crouching. (Tr. 16). The ALJ then relied on the Grids to concluded that plaintiff could perform work that exists in significant numbers in the national economy.

"Reliance on the grids is 'predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs' and therefore 'may not be fully applicable where the nature of an individual's impairment does not result in such limitations'" *Beckley*, 152 F.3d at 1059, (quoting *Foreman,* 122 F.3d 25, and 20 C.F.R. Pt. 404, Subst. P, App.2, § 200.00(e)). When a claimant's non-exertional impairments diminish his residual functional capacity to perform the full range of work set forth in the guidelines, an ALJ must produce expert vocational testimony to establish there are jobs available in the national economy plaintiff is able to perform, in light of his exertional and non-exertional limitations. *Sanders v. Sullivan,* 983 F.2d 822, 823 (8th Cir. 1992)(citing *Thompson v. Bowen*, 850 F.2d 346, 349-50 (8th Cir. 1988)). Non-exertional limitations include: difficulty functioning due to being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing; difficulty tolerating some physical feature(s) of certain work settings (e.g., dust or fumes); difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. 20

5

C.F.R. §§ 404.1569 and 416.969a(c).  Further, pain is a non-exertional limitation.  *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991).

By relying on the Grids, the ALJ  impliedly found that the plaintiff has no significant non-exertional limitations which narrow the range of work he can perform.  (Tr. 16-18).  In reaching this decision with regard to plaintiff's subjective complaints of pain, the ALJ stated:

> From a review of the objective medical evidence previously discussed, it is reasonable to believe that the claimant does experience some degree of pain. However, the severity of his physical impairments, and the degree to which they are functionally limiting, are questionable issues.  The objective medical evidence establishes that the claimant has cervical disc disease, Grade I acromioclavicular joint strain on the right, a sternoclavicular separation on the right side which reasonably could produce some degree of pain.  However, the evidence and testimony indicates the claimant is able to perform most daily living activities, albeit at a slower pace than previously. . . .
>
> ***
>
> He has declined steroid injections which his treating orthopedist recommended and has also declined surgical intervention for his impairments due to the high risk factor.

(T. 17-18).  Although the ALJ acknowledges the fact that plaintiff's impairments do result in a degree of pain, he concluded that this pain does not interfere with plaintiff's ability to perform a full range of light work.  However, substantial evidence does not support this conclusion.

The medical evidence reveals that plaintiff was involved in an automobile accident in August 2002, resulting in the death of his passenger and friend.  (Tr. 154-161).  Plaintiff suffered multiple injuries to include lacerations to his forehead and right ear, a non-displaced fracture of the distal right fifth metacarpal, a sternoclavicular dislocation, and a mild impingement with a possible partial tear of the right rotator cuff.  (Tr. 160, 248-249, 273-274).  Plaintiff's hand was placed in a cast and appeared to heal well without complications.  (Tr. 270).  However, plaintiff's shoulder and clavicle injuries resulted in a great deal of pain.  Although plaintiff was offered Cortisone injections to help alleviate the pain in his shoulder, he chose to pursue physical therapy rather than resort to steroid

injections.  (Tr. 268-269).  Even after undergoing extensive physical therapy and treatment via strong pain medications, plaintiff was noted to have continued shoulder pain and range of motion limitations.  (Tr. 187, 245-246, 258-259, 262-263, 264, 279, 290).  As for plaintiff's sternoclavicular dislocation, Dr. Joseph Ricciardi, an orthopaedist, did not recommend surgery to correct this impairment due to the risk/benefit ratio, which he considered to be quite low.  (Tr. 261).  As such, plaintiff was prescribed a pain management regiment.  (Tr. 187, 245-246, 258-259, 262-263, 264, 279, 290).

Dr. Ricciardi also diagnosed plaintiff with a large right-sided herniated nucleus pulposus (or herniated disk) at the C5-6 level.  (Tr. 247, 252, 258-259).  In March 2003, Dr. Luke Knox, a neurosurgeon, recommended that plaintiff undergo fusion surgery to correct the herniation at the C5-6 level.  (Tr. 279).  However, because this procedure was also risky, plaintiff elected not to undergo surgery.[2]  (Tr. 285, 290, 368).  Again, he was prescribed pain management therapy.

In addition, plaintiff was diagnosed with mild carpal tunnel syndrome on the left side.  (Tr. 243).  An electromyogram and nerve conduction studies confirmed this diagnosis.  (Tr. 243).  The record reveals that plaintiff repeatedly complained of his hands being numb, tingling, and "going dead."  (Tr. 258, 263).

By March 2003, plaintiff was said to have reached his maximum medical improvement.  (Tr. 278).  A functional capacity evaluation revealed that plaintiff had a 13% upper extremity impairment rating which equated to a total partial body impairment between  6% and 8%.(Tr. 259, 278).

---

[2]A plaintiff's failure to follow a prescribed course of treatment is excused when the prescribed treatment, because of its magnitude, unusual nature, or other reason is very risky to the plaintiff.  20 C.F.R. § 404.1530(c)(4).

AO72A
(Rev. 8/82)

Clearly, these objective findings alone substantiate plaintiff's subjective complaints of pain. However, the record also reveals that plaintiff was prescribed a variety of strong pain medications and muscle relaxers to treat his pain. These medications appear in the record on a number of occasions: Percocet, a narcotic analgesic, used to treat moderate to moderately severe pain[3] (Tr. 158, 274); Lortab, also known as Vicodin, a narcotic analgesic combined with a non-narcotic analgesic used to treat moderate to moderately severe pain[4] (Tr. 259, 263); Flexeril, also known as Cyclobenzaprine Hydrochloride, a muscle relaxant prescribed to relieve spasms resulting from injuries such as sprain, strains, or pulls[5] (Tr. 290); and, Norco, also known as Vicodin, a narcotic analgesic combined with a non-narcotic analgesic used to treat moderate to moderately severe pain[6] (Tr. 290).

Additionally, the evidence shows that plaintiff has a 13% upper extremity impairment rating that was not taken into consideration in the ALJ's RFC assessment. Therefore, based on the aforementioned evidence, the undersigned is not persuaded there is substantial evidence to support the ALJ's determination that plaintiff has no non-exertional limitations which limit the range of light work he is able to perform. As noted previously, plaintiff was prescribed and taking narcotic pain medications for the relief of moderate to severe pain. Clearly, his treating physicians, found plaintiff's subjective complaints consistent with the objective medical evidence.

---

[3]*See Percocet, at* www.pdrhealth.com.

[4]*See Lortab, at* www.pdrhealth.com.

[5]*See Flexeril, at* www.pdrhealth.com.

[6]*See Dorco, at* www.pdrhealth.com.

AO72A
(Rev. 8/82)

When a claimant's non-exertional impairments diminish his residual functional capacity to perform the full range of work activity listed in the guidelines, an ALJ must produce expert vocational testimony to establish there are jobs available in the national economy plaintiff is able to perform, in light of his exertional and non-exertional limitations. *Sanders v. Sullivan*, 983 F.2d 822, 823 (8th Cir. 1992)(citing *Thompson v. Bowen*, 850 F.2d 346, 349-50 (8th Cir. 1988)).  Because the ALJ failed to do so in this case, this matter must be remanded for further evaluation.

**Conclusion:**

Based on the foregoing, we reverse the ALJ's decision and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this <u>14th</u> day of March 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

9